# THE SUPREME COURT

OF

# THE STATE OF LOUISIANA.

---

**EASTERN DISTRICT.**

NEW-ORLEANS, MAY, 1839.

---

EMERSON'S HEIRS *vs.* HALL.[*]

IN ERROR FROM THE SUPREME COURT OF THE EASTERN DISTRICT OF
LOUISIANA, TO THE SUPREME COURT OF THE UNITED STATES.

EASTERN DIST.
*May,* 1839.

EMERSON'S
HEIRS
*vs.*
HALL.

14L   1
47 1582

In the seizure and prosecution of a vessel for the violation of law by
the collector, surveyor and naval officer, in a case where no law pro-
vided for their remuneration, they rendered meritorious services, but
these acts impose no obligation on the government, either in law or
equity, to compensate them for these services, which could not have been
set up as a legal or equitable offset to any demand of the government
against them; although, under the rulés of law, any specific demand
imposing even an equitable obligation, might be so pleaded.

Services rendered under the requirements of a contract, or of law, for
which a compensation is fixed, constitute a legal demand, while those
rendered under an authority which is casual, or in some degree discre-
tionary, may constitute an equitable claim.

---

[*] As this case was taken by writ of error to the Supreme Court of the United
States, and the judgment of this court reversed, it has been deemed proper to
publish a report of the decision in these volumes.

EASTERN DIST.
May, 1839.

EMERSON'S
HEIRS
vs.
HALL.

A claim against a foreign government for spoliations is founded on the law of nations, and the obligation is perfect on the offending government, which will be enforced by the government of the injured citizen.

A claim having no foundation in law, but depending entirely on the generosity of the government, constitutes no basis for the action of any legal principle. It cannot be assigned. It does not go to the administrator as assets, and it does not descend to the heir. But if the government, from motives of public policy, or any other consideration, thinks proper to make a grant of money to the *heirs of a claimant, they receive it as a gift, or pure donation.*

This case was taken by writ of error to the Supreme Court of the United States, from the judgment pronounced by this court, at the March term, 1837. See 11 *Louisiana Reports,* 1. 13 *Peters' Reports,* 409.

The question presented to the Supreme Court of the United States, was, whether this court gave a proper construction to an act of congress, directing certain moneys arising from the forfeiture of a vessel and her cargo, prosecuted by B. Chew, collector, William Emerson, surveyor, and E. Lorrain, naval officer of the port of New-Orleans, to be paid said Chew and *the legal representatives* of William Emerson and E. Lorrain, both deceased, respectively? This court decided, that this fund became *assets* in the hands of the administrator or legal representative of Emerson, and liable for his debts. His heirs claimed it as given to them exclusively by the bounty of the government; and to reverse the judgment of this court, they prosecuted a writ of error to the Supreme Court of the United States.

*Coxe,* for the plaintiff in error, contended, that the moneys derived by the children of William Emerson, under the act of congress, were not assets liable to the payment of the debts of their father. They were a gratuity from the government of the United States, and made no part of personal assets, to which the administrator of the estate was entitled. They were not a debt due by the United States to Emerson. The whole proceeds of the vessel called the Josepha Secunda, had, by a decree of the Supreme Court of the

United States, been held to be the property of the United
States.    The act of congress gave a portion of those pro-
ceeds to the officers of the customs; but this was a gift and
not the admission of a claim.

*Mr. Justice M'Lean,* delivered the opinion of the court.

This is a writ of error to the Supreme Court of the State
of Louisiana, under the 25th section of the judiciary act.

The defendant here, as plaintiff in the Court of Probates
at New-Orleans, recovered a judgment in 1830, against the
estate of Wm. Emerson, for seventeen hundred and eighty-
eight dollars, sixty-two cents; and the question in the case
is, whether the heirs of Emerson shall be held responsible
for the payment of this judgment, under the following
circumstances.

In April, 1818, Emerson, being surveyor of the port of
New-Orleans, with B. Chew, the collector, and E. Lorrain,
the naval officer, seized the brig Josepha Secunda, for a
violation of the laws, which prohibit the importation of
slaves, and instituted proceedings against her, which resulted
in the condemnation of the vessel and slaves. This judg-
ment, being pronounced by the District Court of the United
States for Louisiana, was affirmed on an appeal to the
Supreme Court of the United States.

On the cause being remanded to the District Court, the
negroes having been sold as well as the vessel, a question
was raised by several claimants, as to the distribution of the
proceeds of the sale; and the District Court dismissing the
claims of others, allowed those of the collector, the surveyor
and naval officer.    From this decree there was an appeal to
this court: and as appears from 10 *Wheaton,* 331, this court
decided, that the proceeds, under the laws of the United
States, should not be paid to the custom-house officers who
made the seizure, but that they vested in the United States.
The decree of the District Court making the allowance, was,
therefore, reversed, and that part of it which dismissed the
petition of other claimants, was affirmed.

EASTERN DIST.   In 1828, Emerson died, leaving heirs.   On the 3d March,
*May*, 1839.   1831, an act, entitled "an act for the relief of Beverley
────────   Chew, the heirs of William Emerson, deceased, and the heirs
EMERSON'S   of E. Lorrain, deceased," was passed by Congress.
HEIRS
*vs.*
HALL.          The preamble of this act states, "Whereas the brig Jose-
pha Secunda, was condemned in the name of the United
States, in the District Court of the United States, for the
Louisiana District, in the year 1818, on the seizure and pro-
secution, and at the sole expense of Beverley Chew, collector
of the District of Mississippi, William Emerson, deceased,
surveyor, and Edwin Lorrain, deceased, naval officer of the
port of New-Orleans, for an infraction of the slave laws : and
whereas, the one-half of the proceeds of said brig and her
cargo, are now deposited, subject to the order of the said
court, which half would have been payable to the said
Beverley Chew, William Emerson, and Edwin Lorrain, but
for an omission in the laws heretofore passed on that subject:
Therefore, *Be it enacted,* &c., That the District Court of the
United States be authorized and directed to order the pro-
ceeds of the said seizure now deposited, subject to the order
of said court, to be paid over to the said Beverley Chew, and
the *legal representatives* of the said William Emerson and
Edwin Lorrain, respectively."

The question, whether the sum of money received by the
heirs of Emerson under this law, was assets in their hands,
and liable to his debts, was first raised in the Court of Pro-
bates, which decided that it was so liable ; and this judg-
ment was, on an appeal to the Supreme Court of the state,
affirmed.

In the seizure   In the seizure and prosecution of the vessel, for a violation
and prosecution
of a vessel for   of the law, Emerson, with those who co-operated with him,
the violation of
law, by the col-   rendered a meritorious service to the public.   But he acted
lector, surveyor   under no law, nor by virtue of any authority.   And his acts
and naval officer,
in a case where   imposed no obligation, either in law or equity on the govern-
no law provided
for their remu-   ment, to compensate him for his services.   Had he been pro-
neration,   they   secuted on a debt due to the government, he could not have
rendered meri-
torious services,   set up these services either as an equitable or legal offset.
but   these   acts
impose no obli-   And this he might do under the rules of law, of any specific

demand he might have on the government, which imposed on it even an equitable obligation.

It is true, the payment of a debt cannot be enforced against the government by suit; but claims against it are not the less legal or equitable on that account. Services rendered under the legal requirements of law, or of contract, for which a compensation is fixed, constitute a legal demand. Services rendered under an authority which is casual, or in some degree discretionary, may constitute an equitable claim. An individual, by timely efforts, may save from destruction by fire or otherwise, a large amount of public property. This would be a highly meritorious act; but would it constitute a claim on the government for compensation?

From motives of public policy the government might bestow a suitable reward on the individual in such a case; but this would be a gratuity on its part. And if this reward were given to the heirs of such an individual, could it be reached by his creditors? Numerous pensions have been given by law to heirs, for the military services of their ancestors; and are these pensions liable to the debts of the ancestors? Under all the provisions of this kind, has it ever been supposed that the pension, though given to the legal representatives of the deceased, and on the ground of military services, should be paid to his administrators? No individual can be made a debtor against his will. Voluntary benefits may be conferred on him which may excite his gratitude, and which in the exercise of his generosity, he may suitably reward. But this depends on his own volition.

It would constitute a singular item under the law of assets, to raise a charge against an individual, for a benefit conferred on him by some voluntary act of kindness. To find an obligation in such a case, we must look into those writers on ethics, who speak of imperfect obligations which cannot be enforced. The rule is the same, whether the voluntary benefit be conferred on an individual or on the government.

Had Emerson become insolvent and made an assignment, would this claim, if it may be called a claim, have passed to his assignees? We think clearly it would not. Under such

EASTERN DIST.
May, 1839.

EMERSON'S
HEIRS
vs.
HALL.

gation on the government, either in law or equity, to compensate them for these services, which could not have been set up as a legal or equitable offset, to any demand of the government against them; although under the rules of law, any specific demand, imposing even an equitable obligation, might be so pleaded.

Services rendered under the requirements of a contract, or of law for which a compensation is fixed, constitute a legal demand, while those rendered under an authority which is casual, or in some degree discretionary, may constitute an equitable claim.

EASTERN DIST.
May, 1839.

EMERSON'S
HEIRS
vs.
HALL.

an assignment what could have passed? The claim is a nonentity. Neither in law nor in equity has it any existence. A benefit was voluntarily conferred on the government; but this was not done at the request of any officer of the government, or under the sanction of any law or authority, express or implied. And under such circumstances can a claim be raised against the government, which will pass by a legal assignment, or go into the hands of an administrator as assets?

A claim against a foreign government for spoliations is founded on the law of nations, and the obligation is perfect on the offending government, which will be enforced by the government of the injured citizen.

If in this form, debts could be originated against the government, or an individual, there would be no security against such demands. One party without the consent of the other, makes the contract, and assigns it to his creditors; for if there be even an equitable claim, it arises out of a contract express or implied. A claim against a foreign government for spoliations, is not of this character. The demand is in such case founded upon the law of nations, and the obligation is perfect on the offending government. It is true remuneration cannot be recovered against the government by action at law; but if justice be not done, the government of the injured citizen, in the exercise of its discretion, will protect and enforce his rights.

In the case of *Comegys et al.* vs. *Vasse*, 1 *Peters' Reports*, 193, this court held, that the assignees of a bankrupt, are entitled to the share of the indemnity for unjust spoliation, provided for under the treaty of 1819, with Spain. But that case is not analogous to the one under consideration. By the law of nations, Spain was bound to indemnify the owners of foreign vessels which had been illegally captured and condemned under her authority.

A claim having no foundation in law, but depending entirely on the generosity of the government, constitutes no basis for the action of any legal principle. It cannot be assigned. It does not go to the administrator as assets. It does not descend to the heir. And if the government from motives of public policy, or any other consideration, shall think proper, under such circumstances, to make a grant of money to the heirs of the claimant, they receive it as a gift,

A claim having no foundation in law, but depending entirely on the generosity of the government, constitutes no basis for the action of any legal principle. It cannot be assigned. It does not go to the administrator as assets, and it does not descend to

or pure donation. A donation, it is true, made in reference to some meritorious act of their ancestor, but which did not constitute a matter of right against the government.

In the present case, the government might have directed the money to be paid to the creditors of Emerson, or to any part of his heirs. Being the donor, it could, in the exercise of its discretion, make such distribution or application of its bounty as circumstances might require; and it has, under the title of an act " for the relief of the heirs of Emerson," directed in the body of the act, the money to be paid to his *legal representatives.* That the heirs were intended by this designation is clear, and we think the payment, which has been made to them under this act, has been rightfully made, and that the fund cannot be considered as assets in their hands for the payment of debts.

As the decision of the Supreme Court of Louisiana is not in accordance with this view, the judgment of that court is reversed, with costs.

This cause came on to be heard on the transcript of the record from the Supreme Court of the State of Louisiana, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this court, that the judgment of the said Supreme Court in this cause be, and the same is hereby reversed, with costs; and that this cause be, and the same is hereby remanded to the said Supreme Court, that further proceedings may be had thereon, in conformity to the opinion of this court.

EASTERN DIST.
*May,* 1839.

the heirs. But if the government, from motives of public policy, or any other consideration, thinks proper to make a grant of money to the heirs of a claimant, they receive it as a gift or pure donation.